IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
(Topeka Docket)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 13-40070-JAR |
| v. | ) | |
| | ) | |
| SCOTT DEPPISH, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**GOVERNMENT RESPONSE TO DEFENDANT'S MOTION
TO SUPPRESS YAHOO EMAIL SEARCH WARRANT**
(Doc. 19)

The United States of America, by and through Barry R. Grissom, United States Attorney

for the District of Kansas, and Christine E. Kenney, Assistant United States Attorney for said

District, submits this response in opposition to the defendant's Motion to Suppress Yahoo Email

Search Warrant.  (Doc. 19.)   The Court should overrule and deny this motion because, 1) the

warrant was sufficiently particular; 2) there was probable cause to support the issuance of the

warrant; and 3) the search was valid under the good faith exception to the exclusionary rule.

**I.    Factual Background[1]**

**A.    Initiation of the Investigation**

Homeland Security Investigations ("HSI") Cyber Crime Center ("C3") was established

for the purpose of combating crimes involving the use of the Internet.  On July 25, 2012, C3

---

[1]  The government also incorporates this factual background in its response to defendant's
Motion to Suppress Residential Search Warrant.  (Doc. 20.)

received a child exploitation referral from the Queensland Police regarding www.imgsrc.ru ("IMGSRC") user "dirtyoldman71." IMGSRC is a free internet hosting website located in Russia. The IMGSRC website allows users to create and upload images to photo albums. Users can post comments to their own and to other users' photo albums. Dirtyoldman71 posted images of a young girl he described as his nine year old granddaughter. Ultimately, dirtyoldman71 was identified as the defendant, Scott C. Deppish.

James D. Kanatzar conducted the investigation into the images posted by dirtyoldman71. Agent Kanatzar is a Special Agent with the Department of Homeland Security, Homeland Investigations, and was a federal law enforcement officer for over 23 years. During his career, Agent Kanatzar observed and reviewed numerous examples of child pornography, and received training and instruction from experts in the field of child pornography investigations.

Agent Kanatzar was familiar with IMGSRC from other investigations. Agent Kanatzar conducted many forensic examinations of computers and was aware of numerous other child pornography offenders who accessed child pornography images from the IMGSRC website. Agent Kanatzar personally investigated two other individuals who created and posted images of child pornography to photo albums on IMGSRC, and who were involved in the trading of child pornography images with other individuals.

Agent Kanatzar reviewed the contents of dirtyoldman71's IMGSRC photo album titled "9 yo granddaughter sleeping." The album contained four images depicting a girl approximately nine to ten years old, asleep in a bed. In two of the images, the girl was facing away from the camera, with a sheet covering her bare back about mid-way. Agent Kanatzar categorized these two images as child erotica.

The other two images depicted the same girl, asleep on a bed. The girl's face is not visible. The girl is wearing a shirt and panties. The bed sheets were pulled down to the girl's knees, and one of her hands was between her legs. The image angle was from the foot of the bed, and the focus of the camera was on the girl's genital area. Agent Kanatzar believed these two images met the definition of child pornography. Agent Kanatzar noted that the title and content of the photo album was consistent with themes common to child pornography; namely the surreptitious photography of the genital area of a sleeping child, the familial relationship, and the reference to an age under 18 years old.

Agent Kanatzar also noted that messages posted by other IMGSRC users to dirtyoldman71's photo album were indicative of users with an interest in child sexual abuse and child pornography. These IMGSRC users posted messages such as: "gently pull her hair away from her face, climb in her bed and slovly jer*k my coc*k until I cu*m over her face while she sleeps,"; "do you trade if so email me,"; "so delicate..would you like to trade p4p? I think you would like what I have."

**B.      Search Warrant for Yahoo! Email**

On November 29, 2012, Agent Kanatzar submitted an Affidavit in Support of Application for Search Warrant requesting a warrant to search the content of the email account "pigbreeder1971@yahoo.com." This email account was controlled by Yahoo! Inc., located in Sunnyvale, California.

In the affidavit in support of the proposed warrant, Agent Kanatzar outlined his professional background, the factual background of the investigation including an explanation of IMGSRC and how pigbreeder1971@yahoo.com was connected to dirtyoldman71, a description of dirtyoldman71's IMGSRC photo albums, background of Yahoo! email service and storage,

characteristics of child pornography collectors and distributors, and the information to be searched and things to be seized.  Attachment B of the Affidavit outlined the information to be disclosed by Yahoo! Inc. (Section I), and the information to be seized by the government (Section II).  The Affidavit stated there was probable cause to believe that the user of the identified email account had engaged in violations of 18 U.S.C. 2252(a).

On that same date, the Hon. K. Gary Sebelius signed the Search and Seizure Warrant.  In response to that Warrant, Yahoo! Inc. provided to Agent Kanatzar a disk containing the contents of the email account, pigbreeder1971@yahoo.com.

### C.    Yahoo! Search Warrant Results

During the examination of the email account, pigbreeder1971@yahoo.com Agent Kanatzar located approximately 1028 email messages during the time period of January 19, 2012 to December 5, 2012.  Agent Kanatzar found no child pornography images or movies.

Approximately 84 email messages pertained to IMGSRC.  The majority of the messages that related to IMGSRC were from individuals requesting the password to a second dirtyoldman1971 photo album.[2]  Six of the 84 email messages were from other IMGSRC users who provided dirtyoldman71 the passwords to other photo albums.  Agent Kanatzar did not locate any child pornography in the photo albums he was able to access.  Two of the photo album accounts were locked for posting inappropriate material.

### D.    Interview of Defendant

On February 6, 2013, Agent Kanatzar and Cory Odell, a detective with the Junction City Police Department, interviewed the defendant at the Junction City Police Department.  When asked about email addresses, the defendant initially denied that he had heard of the email

---

[2]  The title of the password protected photo album was "Step daughter nude closeup some preg." This photo album did not contain child pornography.

address, pigbreeder1971@yahoo.com.  The defendant then stated that he may have created it for on-line stores, but did not use it.

The defendant admitted that he visited the website IMGSRC, but did not think he had an account.  The defendant admitted that he went to IMGSRC to look for nude images.  The defendant admitted that he had seen child pornography on the website.  The defendant stated that the images were nudist colony type of images, and not images that involved sexual acts with children.  When asked if he ever downloaded child pornography from the website, the defendant paused then indicated not as far as he knew.  When asked if he had created a photo album on IMGSRC, the defendant indicated not as far as he knew.

When asked, the defendant denied ever taking pictures of his granddaughter sleeping.  When shown the image posted to dirtyoldman71's IMGSRC album, the defendant said that the girl looked like his granddaughter, and that it appeared the photo had been taken in his attic spare bedroom.  The defendant denied taking the photo.

The defendant denied any knowledge of the user account, dirtyoldman71.  When asked if he had child pornography on his computer, the defendant indicated not as far as he knew.  When asked for consent to search his computer, the defendant declined.

####    E.    State Search Warrant

The day after the interview of the defendant, Detective Odell interviewed the defendant's stepdaughter M.P., the mother of the child in the IMGSRC photograph.  M.P. identified the child as her daughter, K.A.  M.P. identified the location of the photograph as the attic of the defendant's residence.

On February 12, 2013, Detective Odell executed a search warrant signed by Geary County District Court Judge Charles Zimmerman.  In the affidavit in support of the requested

warrant, Detective Odell described viewing the photographs of the young girl, approximately 9 years old, posted on IMGSRC.  In two of the photos, the girl is sleeping and the angle of the image is from her feet.  The girl is wearing what appears to be a t-shirt and panties, with the panties showing, and the main focus of the image is the girl's pubic region.  Detective Odell noted that the photographs were located in a folder titled "9yo granddaughter" in user account dirtyoldman71.

Detective Odell included the information from Agent Kanatzar that connected dirtyoldman71 to the defendant.  Detective Odell included information from the defendant's interview, including that when asked about use of his computer to view pornography, the defendant began to appear very nervous by sweating and rapidly looking around the room, shifting his weight around.  When asked if he had ever viewed images of child pornography, the defendant inquired as to the definition of child pornography, and talked about seeing pictures from a nudist colony that included children.  The defendant denied knowledge about the user dirtyoldman71 and the email address pigfarmer1971.  The defendant denied taking pictures of his granddaughter and denied posting any pictures on the internet.

On February 11, 2013, Judge Zimmerman, signed the Search Warrant, but added the following handwritten notation:  "Authorization limited to Mr. Deppish's HP computer and other items above described belonging to him or in his control."  Pursuant to the warrant, investigators seized from the defendant's residence an HP desktop computer, two loose computer hard drives, two USB external drives, and numerous CD rom disks.

### F.    Examination of the seized computer equipment

Agent Kanatzar conducted the forensic examination of the seized computer equipment. During the examination, Agent Kanatzar found evidence that the computer user had visited

IMGSRC numerous times.  He also found positive hits for the names pigbreeder1971 and

dirtyoldman71.  In unallocated clusters, Agent Kanatzar found images of girls age 11 to 15, some

in nudist colony type settings.  Agent Kanatzar found some of the images posted by

dirtyoldman71 to the IMGSRC photo album, "step daughter nude closeup some preg."  Agent

Kanatzar also located deleted folders that contained the four images posted by dirtyoldman71 to

the IMGSRC photo album, "9 yo granddaughter sleeping," and image files of child pornography.

## II.    Argument and Authority

The defendant moves to suppress the search warrant executed on his Yahoo email

account because, 1) the warrant was not sufficiently particular; 2) the affidavit failed to establish

probable cause to believe that evidence of the suspected crime would be found in the email

account; and 3) the good faith exception did not save the warrant.  The defendant's arguments

must fail because the warrant was sufficiently particular, there was probable cause to support the

issuance of the warrant, and in any event, the search was valid under the good faith exception to

the exclusionary rule.  Further, because the warrant was not facially deficient and a reasonable

officer could presume it was valid, the defendant is not entitled to a hearing pursuant to *Franks v.*

*Delaware*, 438 U.S. 154 (1978).

### A.    Particularity and the Stored Communications Act

Probable cause exists to issue a warrant if the judge finds, given the totality of the

circumstances, "there is a fair probability that contraband or evidence of a crime will be found in

a particular place."  *Illinois v. Gates*, 462 U.S. 213, 236 (1983).  The Fourth Amendment requires

that a warrant describe with "particular[ity] ... the place to be searched and the persons or things

to be seized."

Warrants for the search of the content of email accounts are governed by the Stored Communications Act (SCA), codified at 18 U.S.C. § 2703. The SCA authorizes the government to obtain the contents of electronic communications from a service provider only when the government obtains a warrant under 18 U.S.C. § 2703(d). 18 U.S.C. § 2703(c)(l)(A)-(B). A § 2703(d) order "shall only issue if the government offers specific and articulable facts showing that there are reasonable grounds to believe that . . . the records . . . are relevant and material to an ongoing criminal investigation." 18 U.S.C. § 2703(d).

There are a few distinctions between a § 2703 search warrant and a search warrant under Fed. R. Crim. P. 41. First, the judicial authority to issue a Rule 41 warrant is generally limited to the search and seizure of property within that judge's jurisdiction, Fed. R. Crim. P. 41(b), but, § 2703(d) allows a court in one jurisdiction, e.g., Kansas, to issue an order for disclosure to an electronic service provider in another jurisdiction, e.g., California.

Second, a Rule 41 warrant would involve the physical seizure of the server from the service provider for imaging and examination by law enforcement. Section 2703(c) allows the service provider to retain its servers while providing certain information to the government for an off-site search pursuant to a warrant.

Third, Rule 41 search warrants were executed only by law enforcement officers. 18 U.S.C. § 3105. Section 2703(g) provides that the "presence of an officer shall not be required for service or execution of a search warrant issued in accordance with this chapter requiring disclosure by a provider . . ."

Finally, § 2703(d) includes a mechanism for the service provider to quash or modify an order "if the information or records requested are unusually voluminous in nature or compliance with such order otherwise would cause an undue burden on such provider." The statute clearly

contemplates that the provider is merely required to disclose information rather than search for information.

Despite the above listed distinctions, obtaining a § 2703 warrant otherwise involves the same procedure described in Rule 41.  That procedure includes the presentation of an affidavit for probable cause review by a neutral and detached magistrate.  18 U.S.C. § 2703(c)(1)(A).

The defendant's particularity challenge rests in large part on opinions from the Hon. David J. Waxse, United States Magistrate Judge, denying previous government requests for search warrants similar to the one at issue here.  In an opinion issued August 27, 2013, Judge Waxse ruled that the Fourth Amendment protections, including the particularity requirement, apply to search warrants seeking content from an electronic service provider.  *In re Applications for Search Warrants for Info. Associated with Target Email Accounts/Skype Accounts*, 13-MJ-8163-JPO, 2013 WL 4647554 at *4 (D. Kan. Aug. 27, 2013) (hereinafter referred to as the "August 27 Order").  Judge Waxse ruled that the government's application violated the Fourth Amendment.  *Id.* at *8.  However, Judge Waxse agreed that the sections of the search warrants pertaining to the government's review of the information from the service providers were sufficiently particular.  *Id.*

Judge Waxse based his ruling in the August 27 Order in part on two opinions which are distinguishable.  The first is *United States v. Otero*, 563 F.3d 1127 (10th Cir. 2009), and the second is *United States v. Elias Barthelman*, CRIM.A. 13-10016-MLB, 2013 WL 3946084 (D. Kan. July 31, 2013).

In *Otero*, the Tenth Circuit's concern was that the first portion of the search warrant addressing the residence included limiting language identifying what the searcher would seize, but the second portion of the search warrant addressing the computer did not include this

limitation.  563 F.3d at 1132 -33.  The result, according to the Court, was that as it related to the computer, the search warrant failed to inform the searcher of the parameters of the search and was, overbroad.  *Id.* at 1133.[3]  These facts are considerably different than the search warrant in the instant case, which included limiting language in Section II of Attachment B to guide the searching law enforcement officer.

Judge Waxse's reliance on *Barthelman* is also misplaced.  Judge Waxse interpreted Judge Monti Belot's finding as follows:

> Defendant challenged the warrants as unsupported by probable cause and overly broad.  Judge Monti Belot found that the warrants were supported by probable cause, but granted the motion to suppress the Yahoo! and Apple warrants on the basis that "the warrants were overbroad and not as particular as the Fourth Amendment requires."  The fact that the warrants were limited to specific accounts, to a specific time frame of six months, and to "evidence of communications used in furtherance of the violation of the laws of the State of Ohio" was not sufficiently particular according to the court.

August 27 Order, at *7.  However, Judge Belot's ruling in fact focused on the lack of reference to a particular criminal statute:

> The only implied limitation to the executing officer is the reference to "any and all evidence of communications used in the furtherance of the violation of laws of the State of Ohio, to wit: Ohio Revised Code Chapter 2907 and any and all other fruits and instrumentalities of crime at the present time unknown."  This language, however, does not sufficiently limit the scope of the warrant. Chapter 2907 includes a variety of sex offenses, including rape, battery and prostitution.

*Barthelman*, 2013 WL 3946084 at *11.

Unlike the instant case, the warrant in *Barthelman* did not reference a particular criminal violation, but instead referenced an entire chapter of criminal statutes.  Here, the warrant proposed a two-step process for the search of the electronically stored information.  First, the warrant required the provider to disclose to the government specified categories of information associated with the identified email account.  Second, the warrant then permitted the government

---

[3]  However, the Court upheld the search under the good faith exception.  *Id.*

to review the electronically stored information submitted by the service provider to identify the subset of information to be seized by the government.  Unlike *Barthelman*, Section II of Attachment B included a reference to a specific federal criminal statute, 18 U.S.C. § 2252(a), to guide Agent Kanatzar, the searching law enforcement officer.

Nothing in 18 U.S.C. § 2703 or Rule 41 precluded the government from requesting that the full content of the specified e-mail account be provided in order to permit government agents to search for the electronically stored information that was subject to seizure.  Practically, this was the most appropriate way to proceed.  Permitting the two-step process set forth in Attachment B eliminated what would otherwise have necessitated a search by government agents of the electronically stored information at Yahoo!'s physical location, a process that would have essentially resulted in the same search but conducted at a different location.  The alternative would be to request Yahoo! technicians to search for the subset of the account information that constituted the evidence that the government was permitted to seize.  This alternative approach would have placed an unreasonable burden on Yahoo! to act as the government's agents.

Moreover, Yahoo! technicians would be less effective than a government agent at determining the relevance of particular e-mails.  Because of training and experience, Agent Kanatzar was more equipped to determine whether an e-mail was potentially evidence of the crimes described in the warrant.  Messages that might appear innocuous to someone without knowledge of the case could actually be crucial evidence (whether inculpatory or exculpatory) of the crimes at issue, and conversely, messages that might appear suspicious to a layperson could be wholly unrelated to the investigation.

Judge Waxse noted that "[a]lthough there are many cases addressing the Fourth Amendment's particularity requirements as to computer searches, there is little guidance on the

particularity that should be applied to search warrants seeking email communications stored in an account provided by an electronic communications service provider." The August 27 Order at *7. Despite this distinction, the Tenth Circuit cases pertaining to the search of files stored on a computer's hard drive are informative.

In *United States v. Burke,* 633 F.3d 984 (10th Cir. 2011), the Court confronted the Fourth Amendment's requirement of particularity and the breadth of documents and other information that a person may store in a computer. The *Burke* Court noted that the "ability of computers to store and intermingle a huge array of one's personal papers in a single place increases law enforcement's ability to conduct a wide ranging search into a person's private affairs, and accordingly makes the particularity requirement that much more important." (Citation omitted.) *Id.,* at 992. The Court, however, went on to state:

> We emphasize that practical accuracy rather than technical precision controls the determination of whether a search warrant adequately describes the place to be searched . . . A warrant need not necessarily survive hyper-technical sentence diagraming and comply with the best practices of *Strunk & White* to satisfy the particularity requirement . . . But, it should enable the searcher to reasonably ascertain and identify the things authorized to be seized. (Citations omitted.)

*Id.* The Court then rejected Burke's argument that the search warrant's failure to confine the search to computer files containing child pornography amounted to a general search.

The Tenth Circuit also discussed computer searches in *United States v. Burgess*, 576 F.3d 1078 (10th Cir. 2009). In *Burgess,* law enforcement officers obtained a search warrant for the defendant's motor home and computer. The warrant authorized the seizure of any evidence "which would tend to show a conspiracy to sell drugs." *Id.* at 1090. The defendant argued that because the warrant failed to include limitations upon law enforcement's search of his computer, the resulting search was unlawful. In addressing the scope of the government's search, the court stated: "officers must be clear as to what it is they are seeking on the computer and conduct the

search in a way that avoids searching files of types not identified in the warrant." *Id.* at 1092. However, a "computer search may be as extensive as reasonably required to locate the items described in the warrant." *Id. See also United States v. Grimmet*, 439 F3 1263, 1270 (10ᵗʰ Cir. 2006); *United States v. Brooks*, 427 F3 1246, 1252 (10ᵗʰ Cir. 2005) (given nature of computers, a search can be as much an art as a science).

The *Burgess* Court further noted that "[t]his court has never required warrants to contain a particularized search strategy . . . Rather, the limitation on the scope of this search was explicitly constrained by content – computer files containing evidence of drug use or trafficking." *Id.* at 1093. "[I]n the end, there may be no practical substitute for actually looking in many (perhaps all) folders and sometimes at the documents contained within those folders, and that is true whether the search is of a computer or physical files. (emphasis added.) *Id.* at 1094-1095. *See also United states v. Schesso*, 2013 WL 5227071 at *6 – 7 (9th Cir. 2013) (acknowledging that the Court has moved away from search protocols, and the absence of such did not violate the Fourth Amendment).

In the instant case, the location of the search was as particularized as possible: the servers of Yahoo! on which the emails associated with the identified account were located. Additionally, the items to be seized from the execution of the search warrant were identified with particularity, and were identified in such a manner as to limit what the searching agent would be authorized to seize: evidence of certain activities relating to material involving the sexual exploitation of a child, pursuant to 18 U.S.C. § 2252(a).

**B.    Probable Cause**

The defendant challenges Judge Sebelius's probable cause determination on the basis that 1) the images described in the affidavit are not child pornography and do not depict sexually

explicit conduct; and 2) there is no nexus between dirtyoldman's IMGSRC albums and the email address pigbreeder1971@yahoo.com. Under the facts of the instant case, this Court should uphold Judge Sebelius's determination that the warrant was supported by probable cause.

The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause." "Probable cause to issue a search warrant exists when the supporting affidavit sets forth sufficient facts that would lead a prudent person to believe that a search of the described premises would uncover contraband or evidence of a crime." *United States v. Sanchez*, 555 F.3d 910, 914 (10th Cir.2009). "Probable cause requires only a probability or substantial chance of criminal activity rather than an actual showing of such activity." *United States v. Biglow*, 562 F.3d 1272, 1281 (10th Cir. 2009) *citing NY v. PJ Video* 475 US 868 877-78 (1986). "Because probable cause is a flexible, common-sense standard, we must interpret the Government's affidavit in a flexible, common-sense way." *Biglow*, at 1282 (quotation omitted).

**The images meet the definition of child pornography.**

The investigation of the defendant focused initially on the suspicion that he knowingly distributed visual depictions of a minor engaged in sexually explicit conduct, in violation of 18 U.S.C. § 2252(a)(2). "Sexually explicit conduct" is defined to include the "lascivious exhibition of the genitals or pubic area." 18 U.S.C. § 2256(2)(E).

In determining whether a visual depiction of a minor constitutes a "lascivious exhibition of the genitals or pubic area," the trier of fact should look to what are referred to as the "*Dost* factors." These factors include the following non-exhaustive list:

> 1) whether the focal point of the visual depiction is on the child's genitalia or pubic area;
>
> 2) whether the setting of the visual depiction is sexually suggestive, i.e., in a place or pose generally associated with sexual activity;

3) whether the child is depicted in an unnatural pose, or in inappropriate attire, considering the age of the child;

4) whether the child is fully or partially clothed, or nude;

5) whether the visual depiction suggests sexual coyness or a willingness to engage in sexual activity;

6) whether the visual depiction is intended or designed to elicit a sexual response in the viewer.

*United States v. Dost*, 636 F. Supp. 828, 832 (S.D. Cal. 1986) aff'd sub nom. *United States v. Wiegand*, 812 F.2d 1239 (9th Cir. 1987) and aff'd, 813 F.2d 1231 (9th Cir. 1987).

The *Dost* Court emphasized that a visual depiction need not involve all of the above factors, and the determination must be "based on the overall content of the visual depiction, taking into account the age of the minor." *Id.* The *Dost* Court further elaborated:

For example, consider a photograph depicting a young girl reclining or sitting on a bed, with a portion of her genitals exposed. Whether this visual depiction contains a "lascivious exhibition of the genitals" will depend on other aspects of the photograph. If, for example, she is dressed in a sexually seductive manner, with her open legs in the foreground, the photograph would most likely constitute a lascivious exhibition of the genitals. The combined effect of the setting, attire, pose, and emphasis on the genitals is designed to elicit a sexual response in the viewer, albeit perhaps not the "average viewer", but perhaps in the pedophile viewer.

*Id.*

The images at issue in *Dost* all involved nude underage females, and the Court held all to meet the definition of sexually explicit conduct. *Id.* at 833. However, nudity is not required. *See*, *United States v. Knox*, 32 F.3d 733, 745 - 746 (3rd Cir. 1994) (finding that lascivious exhibition includes the fully covered genitals or pubic area of minor children, and the images at issue qualified where the video focused on close-up views of the genitals and pubic area); *United States v. Helton*, 302 Fed.Appx. 842 (10th Cir. 2008) (finding a video of a young girl getting off the toilet sexually explicit conduct where the girl's underpants and pubic area were the center of

the focused area, and the defendant intended the videotape to elicit a sexual response in the viewer) *unpublished*.

Based upon the application of the *Dost* factors to the images at issue in the instant case, it was reasonable for Agent Kanatzar to believe that the images met the definition of sexually explicit conduct. Agent Kanatzar is not a lawyer, but he is a federal law enforcement officer with extensive training and experience in the investigation of crimes relating to material involving the sexual exploitation of minors. Agent Kanatzar also included in his affidavit the following information that showed his belief was reasonable:

1.    He was aware of numerous other child pornography offenders who had accessed child pornography images from the IMGSRC website;

2.    He knew from experience and training the surreptitious photography of the genital area of a sleeping child, familial relationship, and reference to age under 18 years were common themes in child pornography; and

3.    The messages posted to dirtyoldman71's album were indicative of individuals with an interest in the sexual abuse of children and in child pornography.

Moreover, Agent Kanatzar's affidavit set forth sufficient facts for the reviewing magistrate to find probable cause to support the issuance of the search warrant.

**There is a nexus between the images and the defendant's email account.**

In addition to establishing probable cause to believe a crime has been committed, the search warrant affidavit must show that there is a "fair probability that evidence of that crime will be found at a particular location." *United States v. Lego*, 2007 WL 2746631 (W.D.Mich 2007). "In issuing a search warrant, a magistrate is entitled to draw reasonable inferences about where the evidence is likely to be kept..." *United States v. McClellan*, 165 F.3d 535, 546 (7th Cir. 1999).

Judge Sebelius properly found a nexus between the images in dirtyoldman71's IMGSRC album and the email address pigbreeder1971@yahoo.com. First, Agent Kanatzar explained in his affidavit how the creation of an undercover password protected photo album on IMGSRC led to the receipt of hundreds of images of child pornography from individuals wanting to trade with the undercover agent. Agent Kanatzar obtained approximately 25 federal search warrants on the email accounts that sent images to the undercover agent and found evidence that these email accounts traded child pornography. Second, Agent Kanatzar explained that a user attempting to contact dirtyoldman71 would do so by sending an email to pigbreeder1971@yahoo.com.

### C.    The Good Faith Exception

In an attempt to obtain a *Franks v. Delaware* hearing, the defendant alleges that Agent Kanatzar's affidavit raises "questions about the accuracy of the facts, as well as whether some omissions of material facts were material." Doc. 19, page 15. Because the defendant's challenge fails to defeat the good faith exception, the Court should deny his request for a *Franks* hearing.

The purpose of the exclusionary rule is general deterrence. *Otero*, at 1133-34, *citing Herring v. United States*, 555 U.S. 135, 129 S.Ct. 695, 699–700 (2009). "Because of this underlying purpose, evidence should be suppressed only if it can be said that the law enforcement officer had knowledge, or may properly be charged with knowledge, that the search was unconstitutional under the Fourth Amendment. " *Id.*, *citing Illinois v. Krull*, 480 U.S. 340, 348–49 (1987). To trigger the exclusionary rule, an officer's misconduct must be sufficiently deliberate that suppression could deter it, and that deterrence is worth the substantial cost of exclusion. *Herring* at 703.

Assuming, arguendo, that the affidavit did not supply probable cause for the warrant, this Court should find that the warrant is saved by the "good faith exception" of *United States v. Leon*, 468 U.S. 897 (1984). "In *Leon*, the Supreme Court modified the Fourth amendment exclusionary rule by holding that evidence seized pursuant to a search warrant later found to be invalid need not be suppressed if the executing officers acted in objectively reasonable, good-faith reliance on the warrant." *United States v. Rowland*, 145 F.3d 1194, 1206 (10th Cir. 1998) *citing Leon* at 922. The *Leon* Court reasoned that the exclusionary rule "is designed to deter police misconduct rather than to punish the errors of judges and magistrates" and noted that purpose is ill-served by excluding evidence "when an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope," because in most of those cases "there is no police illegality and thus nothing to deter." *Leon*, 468 U.S. at 916, 920, 921 *See also Rowland* (refusing to exclude evidence and applying good-faith exception where search warrant not supported by probable cause); *United States v. Callwood*, 66 F.3d 1110, 1113 (10th Cir. 1995) (recognizing applicability of *Leon* good faith exception when officers reasonably relied on warrant issued by a detached and neutral magistrate, "even assuming arguendo that a constitutional violation occurred"); *United States v. Nolan*, 199 F.3d 1180 (10th Cir. 1999) (upholding search based upon Leon good faith exception without deciding whether warrant was supported by probable cause).

Good faith is determined with reference to "the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." *Leon*, 468 U.S. at 922 n.23. However, "it must . . . be remembered that the knowledge and understanding of law enforcement officers and their appreciation for constitutional intricacies are not to be judged by the standards applicable to

lawyers." *United States v. Cardall*, 773 F.2d 1128, 1133 (10th Cir. 1985).   There is a

presumption, which "must carry some weight," that "when an officer relies upon a warrant, the

officer is acting in good faith."  *Id.  See Leon*, 468 U.S. at 922 ("[S]earches pursuant to a warrant

will rarely require any deep inquiry into reasonableness, for a warrant issued by a magistrate

normally suffices to establish that a law enforcement officer has acted in good faith in

conducting the search.") (internal quotations omitted).

Leon identified four instances where an officer's reliance on a warrant would not be

objectively reasonable:  (1) if the judge issued the warrant on a deliberately or recklessly false

affidavit, (2) where the judge abandoned his neutral and detached judicial role, (3) where the

affidavit is so lacking in indicia of  probable cause that it would be unreasonable for the officer

to rely on it, and (4) where the warrant is so facially deficient that an officer cannot reasonably

believe it to be valid.  *Leon*, 468 U.S. at 923, 926.  The tenets of *Leon* require suppression only in

those cases where suppression will have a deterrent effect on the actions of law enforcement

officers:

> If the exclusion of evidence obtained pursuant to a subsequently invalidated
> warrant is to have any deterrent effect, therefore, it must alter the behavior of
> individual law enforcement officers or the policies of their departments. . . . [We]
> conclude that suppression of evidence obtained pursuant to a warrant should be
> ordered only on a case-by-case basis and only in those unusual cases in which
> exclusion will further the purposes of the exclusionary rule.

*Leon*, 468 U.S. at 918.

In the instant case, Agent Kanatzar acted reasonably and in good faith.  *See*

*Cardall*, at 1133 ("When we consider whether the officer relied in good faith upon a

warrant, we must look to the underlying documents to see whether they are devoid of

factual support . . . .  It is only when the [officers'] reliance was wholly unwarranted that

good faith is absent").  Agent Kanatzar's belief in the legal validity of the warrant was objectively reasonable, bringing the instant case squarely within the good faith exception of *Leon*.  Moreover, suppression of evidence obtained pursuant to a warrant should be ordered only in the unusual case where exclusion will further the purposes of the exclusionary rule, i.e. to deter police misconduct.  *Leon*, at 918.  No such misconduct occurred here.

## Conclusion

For the above reasons, the Court should overrule and deny the defendant's Motion to Suppress Yahoo Email Search Warrant.  The warrant was sufficiently particular as to the place to be searched and the items to be seized.  In addition, the warrant was supported by probable cause because the supporting affidavit set forth sufficient facts to lead the reviewing judge to believe the search would lead to evidence of the identified crime.  Finally, even if this Court were to find the warrant not supported by probable cause, the Court should find that the search falls within the good faith exception.

Respectfully submitted,

BARRY R. GRISSOM
United States Attorney

/s/ Christine E. Kenney
Christine E. Kenney, #13542
Assistant U.S. Attorney
444 SE Quincy, Room 290
Topeka, KS  66683
(785) 295-2850
christine.kenney@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on the 25th day of October, 2013, I electronically filed the foregoing Notice with the clerk of the court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

s/ Christine E. Kenney
Christine E. Kenney, #13542
Assistant United States Attorney
444 S.E. Quincy, Suite 290
Topeka, KS 66683
(785) 295-2850
christine.kenney@usdoj.gov