```
 1              IN THE UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF KANSAS
 2                      TOPEKA, KANSAS


 3

      UNITED STATES OF AMERICA,     )  ORIGINAL
 4    ------------------ Plaintiff,)
                                    )  Case No.
 5        vs.                       )  13-40070-JAR
                                    )
 6    SCOTT C. DEPPISH,             )
      ------------------ Defendant.)
 7

 8              TRANSCRIPT OF MOTIONS HEARING

 9        (ORDER AMENDING CONDITIONS OF RELEASE AND
        ORDER STAYING ORDER OF MAGISTRATE SEBELIUS)
10

11          PROCEEDINGS had before the Honorable

12    Julie A. Robinson, United States District

13    Court Judge, for the District of Kansas,

14    Topeka, Kansas, on the 17th day of December,

15    2013.


16

17    APPEARANCES:

      For the Plaintiff:  Christine E. Kenney
18                        Asst. U.S. Attorney
                          290 U.S. Courthouse
19                        444 S.E. Quincy Street
                          Topeka, KS  66683
20
      For the Defendant:  Melody B. Evans
21                        Asst. Fed. Pub. Defender
                          200 U.S. Post Office
22                        424 South Kansas Avenue
                          Topeka, KS  66603-3439
23
                          Scott C. Deppish
24                        Defendant

25    Court Reporter:     Sherry A. Harris, C.S.R.
```

1                         I   N   D   E   X

2                         E X H I B I T S

3

4       PLAINTIFF EX. NO.              OFFERED   RECEIVED

        2                                 38         39

5

6       Certificate ----------------------------- 40

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
1              PROCEEDINGS
2              THE COURT:  All right.  We're here
3    in Scott Deppish, 13-40070.  Your
4    appearances, please.
5              MS. KENNEY:  May it please the
6    Court, the United States appears by Christine
7    Kenney of the United States Attorney's
8    Office.
9              MS. EVANS:  Your Honor, Mr. Deppish
10   is present in person and through counsel,
11   Melody Evans.
12             THE COURT:  All right.  We are here
13   on a motion filed by the United States for an
14   order amending the conditions of release and
15   an order staying the order of Magistrate
16   Judge Sebelius.
17             Ms. Kenney.
18             MS. KENNEY:  Thank you, Your Honor.
19   Your Honor, I would like to proceed by way of
20   proffer at this point.  The Court recently
21   heard evidence pertaining to this particular
22   case, all of which is relevant to the
23   presentation that I will make this morning.
24   But just basically to remind the Court, since
25   we have not had a factual finding and the
```

1        parties have not submitted their briefs to

2        the Court yet, federal agents in this case

3        learned of an image source, initials imgsrc,

4        user Dirtyoldman, who was posting a photo

5        album that contained four images of a young

6        girl, approximately, according to the agent,

7        age 9, two showing her bare back, two with

8        her clothed and the sheet pulled down so that

9        the focus of the image was on the genital

10       area.

11                And, Your Honor, for the Court's

12       reference, that is-- those images are

13       contained in Suppression Hearing Exhibit 2.

14       I have brought a copy of that but was not

15       going to make it a part of this record unless

16       the Court also needed that.

17                THE COURT:  Let's make it a part of

18       this record.

19                MS. KENNEY:  Okay.  I'm sorry, I

20       didn't bring any exhibit stickers.

21                THE COURT:  Now these exhibits were

22       admitted in the suppression hearing, correct?

23                MS. KENNEY:  That's correct.

24                THE COURT:  Let's just--

25                Ms. Evans, do you have any objection

1          to using those same exhibits?

2                    MS. EVANS:  No.

3                    THE COURT:  All right.  We'll just

4          proceed that way.

5                    MS. KENNEY:  Okay.

6                    THE COURT:  So it's Exhibit 2 from

7          the suppression hearing, which was admitted,

8          that you were referring to?

9                    MS. KENNEY:  That's correct.  And

10          the images that I'm referring to are the last

11          four pages of that exhibit, pages 5 through

12          8.

13                    Based on those images, the--

14                    THE COURT:  Okay, I'm sorry, I

15          understand.  Just trying to find the images.

16          All right.

17                    MS. KENNEY:  --federal agents began

18          -- or continued -- an investigation and

19          issued administrative subpoenas and through

20          those subpoenas they were able to connect

21          Dirtyoldman to the defendant, Scott Deppish.

22          The agents followed up with an interview of

23          the defendant, and the defendant denied

24          knowledge of Dirtyoldman or a related E-mail

25          address, pigbreeder1971@Yahoo.com.

1          The defendant did agree that the

2     young girl in the photos looked like his

3     granddaughter, K.A., who, testimony at the

4     suppression hearing revealed, would have been

5     about 12 years old at that time of the

6     interview.  K.A.'s mother was shown the

7     photos and did identify the child as K.A. and

8     stated that the photographs were taken in an

9     attic area in the defendant's residence.

10          Based on that information, agents

11     executed a search warrant on the defendant's

12     residence and law enforcement seized the

13     defendant's computer and two hard drives

14     located in close proximity to the computer.

15     The examination of the loose hard drive

16     revealed these four images that are

17     referenced in part of Exhibit 2 that had been

18     posted to the image source website.  The

19     examination also revealed close to 300 images

20     of child pornography in a deleted folder

21     titled Bad Websites My Briefcase.

22          Your Honor, I have those images, but

23     can generally describe those as including

24     images of prepubescent chirp, some very

25     young.  They depict some of these children

1        engaging in sexual intercourse and fellatio

2        and also lewd exhibition of the genitals, as

3        defined in 18 U.S.C. 2256.  Now to be clear,

4        not all 300 images depict the sexual activity

5        that graphically.  Some are more like posing

6        with the lewd exhibition of the genitals.

7              Your Honor, there is a rebuttable

8        presumption under 18 U.S.C. 3142(c)(3)(e) of

9        detention in these types of cases.  However,

10       because of the Adam Walsh Act conditions, the

11       government did not rely upon this presumption

12       and agreed to release the defendant on

13       conditions that included curfew, location

14       monitoring, and travel restrictions.

15             This past fall, I don't have that

16       date, but the defendant filed his challenge

17       to the imposition of these conditions because

18       of his desire to accompany his wife for

19       medical attention out of state.  Ultimately,

20       the travel and location monitoring conditions

21       were temporarily amended to allow this

22       travel.  Other than this trip, there has been

23       no change in circumstances necessitating the

24       modification of the defendant's release

25       conditions.  The Adam Walsh Act conditions

1     are not excessive as they apply to this

2     defendant.  The excessive bail clause only

3     requires that the condition or conditions not

4     be excessive in light of the perceived evil

5     to be avoided and be reasonably calculated to

6     achieve that goal.  And in this case that

7     goal would be not only the safety of the

8     community, but including the protection of

9     children from the harms that are related to

10    online exploitation crimes.

11            Your Honor, and I'm going to

12    mispronounce this name, but Vujnovich,

13    V-U-J-N-O-V-I-C-H, is a case that was relied

14    upon in the defendant's brief and also by

15    Judge Sebelius.  That is the case in which

16    Judge Waxse found the conditions to be-- I

17    believe he found them to be unconstitutional

18    as well as excessive as applied to that

19    particular defendant.  And Judge Waxse relied

20    on U.S. v. Crowell, C-R-O-W-E-L-L, which is

21    2006 Westlaw, Western District of New York,

22    in reaching his conclusion.

23            However, the Vujnovich-- in the

24    Vujnovich case, Judge Murguia ultimately

25    allowed a temporary travel and a temporary

1      release of the conditions of I believe it was

2      travel and location monitoring.  In that case

3      Vujnovich was charged with receipt of child

4      pornography, and ultimately Judge Murguia

5      found that electronic monitoring was

6      appropriate in that case.  There is no order

7      attached, but I would reference the Court's

8      docket sheet, docket report, and that would

9      be minute entry document number 27.

10             As I said, the Adam Walsh Acts are

11     designed for the protection of the community,

12     including the protection of children.  The

13     Adam Walsh Acts are not excessive in light of

14     that interest.  And I would cite to U.S. v.

15     Gardner, 523 F.Supp. Second 1025, Northern

16     District of California, 2007.

17             Your Honor, there are a number of

18     cases that have upheld these conditions in

19     similar type charges.  U.S. v. Stephens was a

20     receiving and transporting child pornography

21     case, 594 F.3d 1033.  That's an Eighth

22     Circuit case from 2010.  U.S. v. Peeples was

23     receiving child pornography, 630 F.3d 1136, a

24     Ninth Circuit case from 2010.  U.S. v.

25     Kennedy is an unpublished case, but that also

1    involved child pornography charges, although

2    the case doesn't specify which charges, 327

3    Fed.Appx. 706, Ninth Circuit, 2009.  And

4    U.S. v. Cossey, 637 F.Supp. Second 881,

5    District of Montana in 2009.  And that was a

6    receiving and possessing pornography case.

7              These cases, including Vujnovich,

8    all contain charges less severe than those in

9    the current case.  And I acknowledge the

10   content of the images that are the subject of

11   the distribution charge are not what would

12   typically be, however, as the Court's aware,

13   our argument is that those images do meet the

14   Dost factors for purposes of the definition

15   of lewd exhibition of the genitals.

16              In addition to the charge, in this

17   case the defendant's charges pertain to a

18   live victim; and, in fact, a relative.

19   Frequently what we see in this division are

20   the distribution cases that involve

21   peer-to-peer programs.  But in this case the

22   defendant actually took pictures of his

23   sleeping granddaughter and uploaded those

24   images to a website, which, as the Court may

25   remember from the previous testimony and from

1          Exhibit 2, invited numerous comments that

2          were of concern and clearly indicative of

3          individuals who are interested in viewing

4          child pornography.

5                    The conditions of which the

6          defendant complains do not unduly restrict

7          his movements or interfere with his

8          movements-- or interfere with his ability to

9          work.  This Court can and has fashioned these

10         conditions, including the curfew, so as to

11         not interfere with the defendant's

12         employment.  The defendant has done well on

13         release.  However, Your Honor, I would submit

14         that that is easily attributable to the

15         imposition of the Adam Walsh Act conditions.

16                    So unless the Court has any

17         additional questions, that's all I have.

18                    THE COURT:  All right.  Thank you.

19                    MS. EVANS:  Your Honor, as a

20         preliminary matter, I want to clarify.  It's

21         my understanding that the government is not

22         appealing the constitutionality of the Adam

23         Walsh Act and Judge Sebelius' ruling on the

24         constitutionality of that; they are only

25         appealing the removal of these conditions

1        from Mr. Deppish individually.  And I want to

2        make sure that I've got that right.

3                    MS. KENNEY:  That's correct, Your

4        Honor.

5                    THE COURT:  All right.  So you're

6        not challenging the determination that the

7        statute is facially unconstitutional; you're

8        challenging it as applied only?

9                    MS. KENNEY:  I'm challenging-- my

10       understanding is Judge Sebelius did not find

11       it facially unconstitutional.  He found it

12       unconstitutional as applied to this

13       defendant.  That was my understanding of the

14       order.

15                   THE COURT:  Is that your

16       understanding as well?

17                   MS. EVANS:  It is, Your Honor.

18       However, what I think is not clear is whether

19       the government is appealing that legal

20       determination about the Adam Walsh Act as

21       opposed to just treating this case as one in

22       which these conditions should apply to

23       Mr. Deppish individually because of his

24       individual circumstance.  That's more of a

25       factual determination that would be appealed

1    as opposed to any constitutionality ruling by

2    Judge Sebelius.  If this is an appeal of any

3    legal determination by Judge Sebelius I'd

4    like to know that because that's certainly

5    how the government's argument here was

6    directed.

7              THE COURT:  All right.  So there's

8    not-- there was-- Judge Sebelius ruled from

9    the bench, I take it.  It was an oral ruling,

10    was it, last week?  Or was it through

11    issuance of a new order of release and

12    conditions?

13              MS. EVANS:  There was a written

14    ruling by Judge Sebelius about the

15    constitutionality and our challenge to the

16    Adam Walsh Act of the constitutionality.  And

17    in that order he found, as I understand it,

18    that it was unconstitutional based on the

19    Crowell decision.  And based on that decision

20    about the constitutionality, he held that we

21    should have a hearing about Mr. Deppish and

22    whether these restrictions should remain on

23    Mr. Deppish individually as a factual matter.

24              THE COURT:  Do you have a copy of

25    Judge Sebelius' order?

14

```
 1              MS. EVANS:  I do, Your Honor.

 2              THE COURT:  All right.  So in this

 3      order, and I haven't read the whole thing

 4      yet, but Judge Sebelius agrees with

 5      Mr. Deppish's argument.  He says that

 6      mandatory imposition is-- well, he further

 7      explains it so maybe I'm going too fast here.

 8      But he does say in the first paragraph that

 9      he's granting Mr. Deppish another hearing "to

10      determine whether the pretrial release

11      conditions required by the Adam Walsh

12      amendments are necessary to reasonably assure

13      the appearance of Mr. Deppish or to assure

14      the safety of any other person or the

15      community."  And then that hearing didn't

16      happen because then, Ms. Kenney, you filed

17      the motion to stay that order and have this

18      Court conduct the hearing?

19              MS. KENNEY:  No, Your Honor.  That

20      hearing did happen.  And, quite frankly,

21      based on a lot of the cases I read, I could

22      not disagree with the finding that the Court

23      has to make an individualized determination

24      of the appropriateness of those conditions.

25      I did not interpret that as a finding that
```

1    the statute was unconstitutional.  It was

2    merely a clarification that the Court has to

3    make an individual determination.  I agree

4    with that premise.  And what we appealed was

5    Judge Sebelius' finding that in this case

6    location monitoring and curfew were not

7    required.

8              THE COURT:  All right.  So it seems

9    that the due process issue isn't really in

10   front of me because the government is

11   conceding that irrespective of the mandatory

12   language in 3241(c) about the conditions when

13   someone is released, being under a charge

14   such as Mr. Deppish is, the judge needs to

15   make an individualized determination of the

16   appropriateness of those conditions.  Am I

17   correct, Ms. Kenney?

18             MS. KENNEY:  Yes, Your Honor.

19             THE COURT:  All right.  So it seems

20   to me that there's really no due process

21   argument or issue here.  The parties agree

22   that irrespective of that language the Court

23   has to make the same determination it makes

24   with respect to all of these other provisions

25   in the Bail Reform Act, some of them being

1          rebuttable presumptions in favor of

2          detention.  In this case the language on its

3          face appears to be mandatory in terms of the

4          conditions that must be imposed, but I intend

5          to make an individualized determination as to

6          whether these particular conditions that are

7          associated with Adam Walsh Act are necessary

8          in this case with Mr. Deppish's situation.

9                    MS. EVANS:  And for that reason I'm

10         not going to address the Adam Walsh Act or

11         the constitutionality of that or that legal

12         decision of Judge Sebelius'.  I'm just going

13         to concentrate on the facts of this case and

14         whether that calls for these two conditions.

15                   The two conditions that Judge

16         Sebelius removed was the electronic

17         monitoring and the curfew.  The travel

18         restriction remains in place, the no contact

19         order remains in place.  I believe everything

20         else-- the computer restrictions remain in

21         place.  So the only two things at issue have

22         to do with the curfew and the electronic

23         monitoring.  So with that clarification, if I

24         could also proceed by proffer.

25                   THE COURT:  All right.

```
 1              MS. EVANS:  Mr. Deppish has no
 2    criminal history, he has no history of
 3    failure to appear, he has no history of
 4    violence, he has no alcohol problems, he has
 5    no health issues, and he has no drug problem.
 6    There are no computers at his house.  There's
 7    no internet at his house.  He does not have a
 8    phone with internet access.  His wife does,
 9    however, and it is password protected.  He
10    has strong family--
11              THE COURT:  Stop.  Stop.  So he has
12    no computer at his house, but his wife has a
13    computer at the house?
14              MS. EVANS:  His wife has a cell
15    phone that has access to the internet.  But
16    it is her phone.  He does not use it.  It is
17    password protected.  And I believe that was
18    part of the bond conditions, that he not have
19    access to that phone or the internet.
20              THE PROBATION OFFICER:  He cannot
21    have-- people that are charged with the Adam
22    Walsh provision cannot themselves have
23    internet.  Spouses can have phones if it is
24    password protected, but he's not allowed to
25    use it.
```

1          MS. EVANS:  And he is in compliance

2     with that and we are not appealing that

3     particular aspect of the Adam Walsh Act here.

4          He appeared here originally on a

5     summons.  He's appeared for every hearing

6     that he's been called to.  And it's my

7     understanding that the government is not

8     claiming that he is a flight risk, that this

9     is only a component about whether he is a

10    danger to the community.

11         The most recent charge in this case

12    was January 25th of 2012.  The search warrant

13    occurred I believe in February of this year,

14    but he was not indicted until June 26th of

15    this year.  So the government, knowing what

16    they knew from the search warrant in that

17    investigation, did not act and did not indict

18    him between February and June 26th, so

19    Mr. Deppish remained at liberty without any

20    restrictions during that time.

21         He did travel to the Mayo Clinic.

22    There were no issues there.  There were no

23    problems there.  He has remained in

24    substantial and I believe full compliance

25    with all of the restrictions imposed upon

1    him.  He lives with his father and his wife.

2    There are no minor children in the home.  He

3    has a history of stable employment and is

4    employed full time right now.  He is a

5    veteran of the Navy.  He has the support of

6    many members of his family, and they did

7    attend the hearing in this case.

8            If the Court recalls from the

9    evidence at the suppression hearing in this

10   case, the exhibits in-- or Government Exhibit

11   Number 2 had to do with a nine-year-old.  It

12   was entitled a nine-year-old girl.  That girl

13   is 12 years old now.  And she was interviewed

14   and denied that there was any contact or any

15   problem with Mr. Deppish.

16           There is no contact offense charged

17   against Mr. Deppish.  The government in its

18   motion suggests that this was a pornographic

19   site, but the exhibits, particularly I

20   believe Defendant Exhibit Number 412,

21   indicate that this is in fact a legitimate

22   photo sharing site that has restrictions on

23   it.  So it is not a site that is used

24   exclusively for pornography.

25           This monitoring device is severely

1    intrusive.  He has to wear it on his ankle at

2    all times and he has to pay over $5 a day for

3    it as well as keep a land line in his home.

4    He is indigent, as I represent him, but this

5    is costing him over $200 a month.  Those are

6    the facts that we have to proffer to the

7    Court.  I don't know if the Court wants me to

8    go ahead and move into argument.  If I could

9    have just one moment, Your Honor.

10             THE COURT:  Yes.

11             (THEREUPON, Ms. Evans and the

12    defendant conferred off the record).

13             MS. EVANS:  Thank you, Judge.

14             THE COURT:  Yes, you can proceed

15    with argument.

16             MS. EVANS:  It appears that the

17    government's argument is based solely on the

18    charges in this case.  And these are, in

19    fact, just charges and allegations against

20    Mr. Deppish.  He has made no concessions.  He

21    made no admissions when-- about this.  And he

22    challenges this and he intends to go to trial

23    on this.  The Court cannot impose

24    restrictions that are this intrusive based

25    only on the charges against Mr. Deppish.  And

1      that is in fact the case here because there's

2      nothing else about this case that compels

3      such serious restrictions on his liberty.

4              The Court, in looking at the

5      conditions to be imposed, is to find the

6      least onerous restrictions available to

7      assure that Mr. Deppish is not a danger to

8      the community.  And that's not-- doesn't

9      require 100 percent assurance but reasonable

10     assurance that he is not a danger to the

11     community.

12             And given the restrictions on him

13     right now, without the two that are

14     challenged, given his history, given the

15     charges in this case even, that they are

16     not-- that it doesn't allege any contact,

17     given the fact that there was a gap between

18     the time that the government discovered this

19     and indicting it and they did not seem to be

20     so concerned about community safety at that

21     point to act immediately, there is just no

22     justification in this case to impose location

23     monitoring.

24             The restrictions that he has on him

25     right now are simply enough, and that has

1          been demonstrated by his compliance in this

2          case.  I think that his compliance in this

3          case is not due to the restriction but due to

4          the fact that he intends to comply with this

5          because he wants to stay at liberty on bond,

6          because that is the nature of his background,

7          because he has the support of his family, and

8          because he does want to go to trial on these

9          and challenge these allegations.  He has

10         substantial reason to be in compliance with

11         the bond conditions absent any monitoring and

12         absent that cost of the monitoring.

13              When we look at the cases that

14         usually come before Judge Sebelius, and I

15         know there aren't a lot of appeals in this

16         division, but we often have people with

17         significant criminal histories, even

18         occasionally with failures to appear, history

19         of violence, with mental health issues, with

20         drug issues, that remain on bond and are

21         released on bond without necessarily having

22         this restriction of location monitoring.  And

23         to say that simply because of the charges

24         against Mr. Deppish he needs this intrusive

25         restriction on him is not supported by the

1    statute, it's not supported by the facts.

2         In the original motion that I filed

3    challenging the constitutionality, several

4    courts talked about how incredibly intrusive

5    this sort of monitoring is on someone's

6    liberty and that it needs to be justified by

7    something other than the charges.  One-- one

8    court even likened it to-- let's see, said

9    electronic monitoring devices that inhibit

10   straying beyond spacial home property limits,

11   like those used to restrain pet dogs, are

12   intrusive and infringe on the liberty and

13   freedom of movement that are guaranteed by

14   the Constitution.

15        And that's not to drift into the

16   constitutional argument, but it's just to

17   point out how intrusive and restrictive this

18   particular location monitoring is and that

19   it's simply not necessary in Mr. Deppish's

20   case given his personal history, given his

21   compliance while on pretrial release, and

22   given the fact that the only basis the

23   government has for asking for these

24   restrictions are the charges in the

25   indictment.  So unless the Court has further

24

1          questions, that's what we have to present.

2                    THE COURT:  All right.  Thank you.

3                    Ms. Kenney, if you want, you can

4          have the last word.

5                    MS. KENNEY:  Your Honor, I would

6          just like to correct a few-- or at least

7          clarify a few statements.  First of all, the

8          time frame between the execution of the

9          search warrant at the residence and the

10         filing of charges in this case was about four

11         months, maybe four and a half months.  And as

12         this Court is well aware, any electronic

13         forensic examination to be completed in that

14         period of time is actually pretty quick.

15                   Second, there was a warrant issued

16         for the defendant's arrest, but the defendant

17         was allowed to turn himself in on that

18         warrant on a particular date.  Which I would

19         make a distinction between that and being

20         issued a summons to appear.  That's all I

21         have, Your Honor, unless the Court has any

22         questions.

23                   MS. EVANS:  Judge, may I make one

24         point?

25                   THE COURT:  Yes.

1          MS. EVANS:  In cases where the

2     government has thought that there was a real

3     danger to the community they have acted on a

4     complaint and brought someone in immediately.

5     They have not necessarily had to wait to do

6     the entire evaluation of the computer and

7     indict some months later.  In this case they

8     did not act upon a complaint based on some

9     perception of danger to the community.

10          THE COURT:  All right.  We're here

11     on the government's motion for an order

12     amending the conditions of release and

13     staying the order of Magistrate Judge

14     Sebelius in which Judge Sebelius modified his

15     previous order that released this defendant,

16     Scott Deppish, on certain conditions.  Judge

17     Sebelius modified the order to lift the

18     electronic monitoring and curfew conditions

19     that he had previously imposed as necessary

20     pretrial release conditions.

21          The Court is guided by the Bail

22     Reform Act in this case at 18 United

23     States Code, Section 3142, et seq.  And in

24     particular, subsection (c) of that statute

25     provides for release on conditions and the

1    standards that the Court must apply in

2    determining what conditions should be imposed

3    upon release.

4        The Court begins, though, with the

5    following findings of fact, and then I will

6    turn to applying the Bail Reform Act itself.

7    In this case the defendant is charged in a

8    grand jury indictment with violations of two

9    statutes, Title 18, United States Code,

10   Section 2252(a)(2), which is access with

11   intent to view child pornography, and one

12   count of distribution of child pornography,

13   in violation of Title 18, United States Code,

14   Section 2256.

15       Being charged under these particular

16   statutes, the Court is mindful that the Bail

17   Reform Act establishes a rebuttable

18   presumption in favor of detention of this

19   defendant based on these charges.

20   Specifically, in subsection 3142(e)(3) the

21   Bail Reform Act provides that subject to

22   rebuttal by the person, it shall be presumed

23   that no condition or combination of

24   conditions will reasonably assure the

25   person's appearance as required and the

1     safety of the community if the judicial

2     officer finds that there's probable cause to

3     believe that the person committed certain

4     offenses.  And that would include, under

5     subsection (e), an offense involving a minor

6     victim under a number of statutes, including

7     those at issue here.  2252(a)(2) and 2256

8     does not appear to be in the list of those

9     that are included in the rebuttable

10    presumption.

11         In this case Magistrate Judge

12    Sebelius, obviously, found at the initial

13    hearing that that presumption had been

14    rebutted.  In fact, the government proffers

15    today that they did not seek detention of

16    Mr. Deppish.

17         There appears to be no real issue in

18    this case with respect to the necessity

19    to-- there appears to be no real issue here

20    as to a risk that Mr. Deppish will not

21    appear, as required.  He has appeared as

22    required while on bond.  He's never had a

23    history of failure to appear nor any other

24    criminal history or interaction with the

25    system that would indicate that he would not

1    appear.  And in fact, he did surrender

2    himself on a warrant in this case such that

3    law enforcement did not have to actually

4    arrest him.

5              So the issue in this case is, given

6    that Mr. Deppish has overcome the presumption

7    and has been released on bond under section

8    3142(c), which under subsection 1(b) provides

9    that the judge is to issue a release order

10   subject to the least restrictive further

11   condition or combination of conditions, are

12   there conditions which in this case would

13   reasonably assure the safety of any other

14   person in the community.

15             Now, subsection (c)(1)(B) gives a

16   laundry list, a noninclusive laundry list, of

17   the types of conditions that the judicial

18   officer should consider in imposing

19   conditions of release.  And those include a

20   number of conditions, many of which have been

21   imposed against Mr. Deppish.

22             At the very end of that section of

23   the statute, 3142(c)(1)(B), there is this

24   language that says in a case that involves a

25   minor victim, under certain statutes,

1            including 18 U.S.C., Section 2252(a)(2), any

2            release order shall contain at a minimum the

3            condition of electronic monitoring in each of

4            the conditions specified in certain

5            paragraphs in the laundry list.  And those

6            would include travel restrictions, avoid

7            contact with the alleged victim, a reporting

8            requirement with probation, a curfew, and the

9            no firearm condition.

10                   Now, the Court is mindful of its

11           obligations under the Bail Reform Act to

12           determine whether there is a condition or

13           combination of conditions that can reasonably

14           assure Mr. Deppish can be released.  And

15           specifically, in this case that determination

16           has already been made and there's no real

17           issue.  So the Court is mindful of its

18           obligation to make sure that the condition or

19           combination of conditions are the least

20           restrictive that will assure the safety of

21           any other person in the community.

22                   And so that brings us to what is at

23           issue in this case and that is whether this

24           Court agrees with Judge Sebelius'

25           determination that lifting the curfew and the

1      electronic monitoring restrictions satisfies

2      this language to release with the combination

3      of the least restriction conditions.

4              In determining what are the

5      appropriate conditions, the Court is guided

6      by the Section 3142(g) factors.  And those

7      include a number of factors, including the

8      nature and circumstances of the offense, the

9      weight of the evidence against the person,

10     the history and characteristics of the

11     person, and the nature and seriousness of the

12     danger to any person or the community that

13     would be posed by the person's release.

14             And in that regard, the Court finds

15     that there is probable cause to believe that

16     Mr. Deppish committed the crimes that he's

17     charged with.  There's been a probable cause

18     determination by the grand jury.  Based on

19     the evidence in the record, the Court finds

20     that there is such probable cause to believe

21     that.  That's the nature of the offense.

22             The circumstances of the offense,

23     the Court finds, are that Mr. Deppish is

24     charged with distribution and possession with

25     intent to access child pornography, two

1    charges.  And specifically, with-- well,

2    specifically, with respect to both of these

3    charges, the circumstances of import to this

4    Court are that the person depicted in these

5    photographs is the step granddaughter or

6    granddaughter of this defendant, a minor

7    child who was nine at the time the images

8    were taken, the photographs were taken.  She

9    is now 12.  Her initials are K.A.

10            She has denied that the defendant

11    has ever tried to or attempted to physically

12    contact her or touch her.  Her mother has

13    identified that it is indeed K.A. depicted in

14    the photographs and further has indicated

15    that in the background she can tell that

16    these photographs were taken in the

17    defendant's attic.  So those are the

18    circumstances of import to this Court.

19            The weight of the evidence against

20    Mr. Deppish, again, there's been a probable

21    cause determination at this point, although

22    the Court is mindful, again, of the evidence

23    that it's just stated with respect to the

24    interview of K.A.'s mother as well as K.A.

25            The history and characteristics of

1    Mr. Deppish:  He's never been convicted of a

2    crime; he has resided in the community of

3    Junction City his entire life; he has been at

4    his current address since January of 2005;

5    he's 42 years old; he has some high

6    school education-- has high school education

7    and some college; he resides with his wife;

8    he resides also with his father; he has

9    family ties in the community; he has a child

10    who doesn't live in the community.

11           Mr. Deppish is employed.  He's been

12    employed at this particular employer since

13    March of 2010.  His monthly income is about

14    $26,000.  He has a net worth of about

15    $63,000.  His estimated monthly cash flow is

16    $1,600.  He is in good physical health.  He

17    has no substance or alcohol abuse or issues.

18    He has no mental health issues that are

19    apparent at this time.  He has absolutely no

20    criminal history.  So those are the facts of

21    import to this Court in considering the

22    history and characteristics of Mr. Deppish.

23           And then finally, the other factor

24    the Court is to consider is the nature and

25    seriousness of the danger to any person or

1    the community that would be posed by the

2    person's release.  And I think what this

3    really comes down to is that these are

4    serious charges, obviously, and there is a

5    rebuttable presumption in favor of detention.

6    I don't think Mr. Deppish should be detained

7    in this case.  I think the presumption has

8    been overcome, as it, frankly, is in a number

9    of other cases this Court has seen where

10    people are charged with essentially the same

11    types of crimes.  The question is whether the

12    curfew restriction and the electronic

13    monitoring restriction are excessively

14    restricted.  And I find that they are not.

15            The risk here -- and based on the

16    nature of this offense as charged at this

17    point on the basis of probable cause -- the

18    risk here is that Mr. Deppish is not just

19    charged with receiving child pornography,

20    he's not charged with sharing or distributing

21    child pornography that he received from

22    someone else, he's charged with essentially

23    creating an image or images that he then

24    shared with others on a site that may have

25    been used legitimately by some, but obviously

1        was also used by others out of their sexual

2        interest in underaged children.

3                The comments on-- the comments of

4        the users of this site that posted on this

5        photograph make it clear that their interest

6        in this child's image is sexual in nature.

7        And Mr. Deppish created and posted that

8        image.  Emphasis on created.  He had access

9        to the person that's depicted in the image

10        because that person is in a family

11        relationship with him.  And there's evidence

12        that the picture was actually even taken in

13        his house.

14                So the curfew restriction, for

15        example, is one that I do not think is overly

16        restrictive because the objective is that

17        Mr. Deppish's contact with the community and

18        his ability to take photographs of other

19        children or engage in other inappropriate

20        contact with other children will be minimized

21        through a curfew obligation that allows him

22        to work and allows him to do the things that

23        he needs to do in life but at the same time

24        keeps him from having free reign of being out

25        of his house at other times.

1                The electronic monitoring condition

2       is restrictive in the sense that it costs

3       money.  It costs money.  If he can afford to

4       pay it, he has to pay for it.  If he can't

5       afford to pay for it, I suppose there's some

6       relief there.  But in any event, it's

7       restrictive in the sense it is something he

8       has to wear all of the time.  But again, on

9       balance, the Court finds that it is not

10      overly restrictive because, again, the

11      objective is for the probation office to make

12      sure, one, that he's complying with his

13      curfew obligation; and, two, that he is at

14      home, or wherever he says he's supposed to

15      be, but clearly that he's at home when he's

16      supposed to be at home.

17                There is a condition that he avoid

18      contact with the alleged victim.  He is not

19      to have contact with minor children.  These

20      are all restrictions that working together,

21      the combination of conditions here, that the

22      Court finds is appropriate and are all

23      designed to make sure that Mr. Deppish cannot

24      impose any sort of risk on the community by

25      inappropriate contact with children, whether

1          that's through the lens of the camera or

2          through touching them or otherwise.

3                    And the Court finds on balance he's

4          able to work, he's able to have some freedom

5          of movement as he needs to, but at the same

6          time these conditions allow the-- a

7          reasonable assurance that the safety of other

8          children, other persons in the community, and

9          particularly minors in the community, is

10         assured.

11                   The Court finds, thus, by all of the

12         evidence that these conditions are not

13         excessive, that they are reasonable both in

14         application and in objective, and, thus, the

15         Court will grant the government's motion and

16         modify the order of release to return the

17         order of release to all of the conditions

18         that were imposed by Judge Sebelius at the

19         outset of that case, and specifically to

20         reimpose the curfew condition and to reimpose

21         the electronic monitoring condition.  And to

22         that end, I order Mr. Deppish to appear at

23         the U.S. Probation Office tomorrow so that

24         Ms. Kerns can work together with him to

25         reimpose the electronic monitoring conditions

37

1    and anything that needs to be done here at

2    the probation office to effectuate that.

3              So that will be the order of the

4    Court.  We will just enter a text entry

5    incorporating by reference the oral findings

6    and conclusions that were made at this

7    hearing today.

8              MS. KENNEY:  Your Honor, the only

9    thing I want to just as a housekeeping matter

10   make sure, I don't think we technically

11   introduced Exhibit 2 in this hearing.  But if

12   we did, if it needs to be referenced for any

13   reason, I would just ask that it

14   be-- continue to be under seal.

15             THE COURT:  No, we didn't admit it

16   for purposes of this hearing.  We relied on

17   the record from the suppression hearing.  It

18   is Exhibit 2.  It was at admitted at the

19   suppression hearing.  And it's not readmitted

20   but the Court considered it and viewed those

21   images again today.  It was admitted under

22   seal.  It will remain under seal, as are, I

23   think, all of the other exhibits that were

24   admitted.

25             MS. KENNEY:  I think it was just

38

1      Exhibit 2 was the only one that contained the

2      contraband.

3              THE COURT:  All right.  Exhibit 2

4      was admitted under seal and it will stay

5      under seal--

6              MS. KENNEY:  Thank you.

7              THE COURT:  --absent an order to the

8      contrary.

9              All right.  So we'll be in recess on

10      this case.

11              MS. EVANS:  Your Honor, if I may.

12              THE COURT:  Uh-huh.

13              MS. EVANS:  Both in our proffers and

14      factual argument and I believe in the Court's

15      ruling there was reference to the evidence

16      that was introduced at the suppression

17      hearing.  So--

18              THE COURT:  I meant Exhibit 2

19      specifically.

20              MS. EVANS:  All right.  We would ask

21      the Court to allow us to move to incorporate

22      the testimony and evidence that was presented

23      at the suppression hearing as part of this

24      record because we do intend to appeal, and I

25      do think that both the Court and the parties

1         did rely to some extent upon the evidence

2         that was adduced at that hearing.

3                   THE COURT:  All right.  Any

4         objection by the government?

5                   MS. KENNEY:  No, Your Honor.

6                   THE COURT:  All right.  The motion

7         to incorporate the entire record, that being

8         the transcript as well as the exhibits

9         admitted at the suppression hearing, is

10        granted.

11                  MS. EVANS:  Thank you.

12                  THE COURT:  And again, that means

13        Exhibit 2 will be admitted under seal.  But

14        obviously, the appellate court will be able

15        to have access to it if they need to.

16                  So all right.  We'll be in recess

17        until 1:30.

18                       (THEREUPON, the hearing

19        concluded).

20

21

22

23

24

25

```
1        UNITED STATES OF AMERICA   )
                                    )     ss:
2        DISTRICT OF KANSAS         )

3

4                  C E R T I F I C A T E

5

6        I, Sherry A. Harris, Certified Shorthand

7    Reporter in and for the State of Kansas, do

8    hereby certify that I was present at and

9    reported in machine shorthand the proceedings

10   had the 17th day of December, 2013, in the

11   above-mentioned court; that the foregoing

12   transcript is a true, correct, and complete

13   transcript of the requested proceedings.

14        I further certify that I am not attorney

15   for, nor employed by, nor related to any of

16   the parties or attorneys in this action, nor

17   financially interested in the action.

18        IN WITNESS WHEREOF, I have hereunto set

19   my hand and official seal at Topeka, Kansas,

20   this 20th day of December, 2013.

21

22                  /s/ Sherry A. Harris
                    Certified Shorthand Reporter
23

24

25
```