IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
(Topeka Docket)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 13-40070-JAR |
| v. | ) | |
| | ) | |
| SCOTT DEPPISH, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**GOVERNMENT SUPPLEMENTAL RESPONSE
TO DEFENDANT'S MOTION TO SUPPRESS
YAHOO EMAIL SEARCH WARRANT**

The United States of America, by and through Barry R. Grissom, United States Attorney

for the District of Kansas, and Christine E. Kenney, Assistant United States Attorney for said

District, submits this supplemental response in opposition to the defendant's Motion to Suppress

Yahoo Email Search Warrant.  (Doc. 19.)   The United States previously submitted a response

(Doc. 25), and incorporates those facts and arguments herein.  On December 11, 2013, the Court

heard evidence on the matter, and allowed the parties to file written closing arguments.

Based upon the evidence presented and the record in this case, the Court should find:  1)

the warrant was sufficiently particular; 2) there was probable cause to support the issuance of the

warrant; and 3) the search was otherwise valid under the good faith exception to the exclusionary

rule.

1

# I.    PROPOSED FINDINGS OF FACT[1]

On November 29, 2012, the Honorable K. Gary Sebelius signed a search warrant (Gov. Ex. 6), authorizing the search of Yahoo! email account "pigbreeder1971@yahoo.com" for items listed in Attachment B of the warrant.  The affidavit in support of the warrant (Gov. Ex. 5), was signed by Agent James D. Kanatzar, Department of Homeland Security, Homeland Security Investigations ("HSI").  In finding probable cause to issue the warrant, Judge Sebelius relied upon the facts set forth in Agent Kanatzar's affidavit.

On February 11, 2012, Det. Cory Odell, Junction City Police Department, applied for a search warrant of the defendant's residence and the defendant's computer.  (Gov. Ex. 9, 11.)  Det. Odell included in his affidavit (Gov. Ex. 8, 10), information regarding his participation into the investigation of the defendant as it pertained to IMGSRC user dirtyoldman71.

## A.    Facts contained in the affidavit of Agent Kanatzar

In January 2012, Russian law enforcement officers provided records to HSI Cyber Crime Center ("C3") regarding a user on the Russian website www.imgsrc.ru ("IMGSRC").  The user account, "dirtyoldman71," had posted images of a young girl in a photo album labeled "9 yo granddaughter sleeping.  Ultimately, agents connected user dirtyoldman71 to the defendant, Scott C. Deppish.  (Gov. Ex. 5, p. 4 – 6.)

Agent Kanatzar conducted the investigation pertaining to IMGSRC user dirtyoldman71.  Agent Kanatzar is a Special Agent with HSI, and at the time he authored the affidavit had been a federal law enforcement officer for over 23 years.  During his career, Agent Kanatzar participated in numerous investigations relating to the sexual exploitation of children.  Agent Kanatzar had also observed and reviewed numerous examples of child pornography, and had

---

[1]  The government also incorporates this factual background in its supplemental response to defendant's Motion to Suppress Residential Search Warrant.  (Doc. 20.)

received training and instruction from experts in the field of child pornography investigations. (Gov. Ex. 5, p. 1.)

Agent Kanatzar was familiar with IMGSRC from other investigations.   Agent Kanatzar conducted many forensic examinations of computers and was aware of numerous other child pornography offenders who accessed child pornography images from the IMGSRC website. Agent Kanatzar was personally involved in the investigation of two other individuals who created and posted images of child pornography to photo albums on IMGSRC.  Agent Kanatzar executed federal search warrants on those two individuals' residences and on their email accounts associated with IMGSRC.  Both cases revealed that the individuals were trading child pornography images with other individuals.  (Gov. Ex. 5, p. 3.)  Agent Kanatzar was also aware of the undercover investigations into IMGSRC by another HSI agent that led to federal search warrants on approximately 25 email accounts.  These email accounts showed trading of child pornography with other users.  (Gov. Ex. 5, p. 4.)

Agent Kanatzar reviewed the contents of dirtyoldman71's IMGSRC photo album titled "9 yo granddaughter sleeping."  The album contained four images depicting a young girl approximately nine to ten years old, asleep in a bed.  In two of the images, the girl was facing away from the camera, not wearing a shirt, under a sheet covering up to her bare shoulder. Agent Kanatzar categorized these two images as child erotica.   (Gov. Ex. 5, p. 6.)

The other two images depicted the same girl, asleep on a bed.  The girl's face is not visible.  The girl is wearing a shirt and panties.  The bed sheets were pulled down to the girl's knees, and one of her hands was placed between her legs.  The image angle was from the foot of the bed, and the focus of the camera was on the girl's genital area.  Agent Kanatzar believed these two images met the definition of child pornography.  (Gov. Ex. 5, p. 6 – 7.)

Agent Kanatzar noted that the title and content of the photo album were consistent with themes common to child pornography, namely:  the surreptitious photography of the genital area of a sleeping child, the familial relationship, and the reference to an age under 18 years old. (Gov. Ex. 5, p. 7.)

Agent Kanatzar also noted that messages posted by other IMGSRC users to dirtyoldman71's photo album were indicative of users with an interest in child sexual abuse and child pornography, as well as an interest in trading pictures.  These IMGSRC users posted messages such as:  "gently pull her hair away from her face, climb in her bed and slovly jer*k my coc*k until I cu*m over her face while she sleeps,"; "do you trade if so email me,"; "so delicate..would you like to trade p4p? I think you would like what I have,"; "such nice shoulders… I'd roll her over and taste.  P4p?"  Agent Kanatzar defined "p4p" as the trading of "picture for picture."  (Gov. Ex. 5, p. 7.)

Agent Kantazar also included a section describing the characteristics prevalent among child pornography collectors and distributors.  These characteristics, based upon Agent Kanatzar's training and experience, include: individuals interested in child pornography seek out like-minded individuals; and the majority of these individuals rarely, if ever, dispose of their collections.  (Gov. Ex. 5, p. 11 – 12.)

Attachment B of the search warrant outlined the information to be disclosed by Yahoo! Inc. (Section I), and the information to be seized by the government (Section II).  (Gov. Ex. 6.) Finally, although Agent Kanatzar did not include in his affidavit a list of definitions, he referenced the statute that contains the definitions relating to federal sexual exploitation crimes. (Gov. Ex. 5, p. 2; 18 U.S.C. § 2256.)

**B.    Testimony at the suppression hearing – Agent Kanatzar**

**1.    Dirtyoldman71**

At the suppression hearing, Agent Kanatzar testified regarding his training and experience investigating on-line child exploitation crimes.  As of November 29, 2012, Agent Kanatzar estimated that he had been involved in over one hundred such investigations.  Agent Kanatzar has received specialized training in forensic computer examinations, and has conducted such examinations in his own investigations as well as for investigations conducted by other agents.  Agent Kanatzar estimated that he had applied for over 30 search warrants similar to the search warrant in the instant case, and each one had been granted.  Agent Kanatzar had not submitted a similar warrant to Judge Waxse, but had submitted similar search warrants to other magistrate judges in the District of Kansas.

Agent Kanatzar testified regarding the investigation of the dirtyoldman71 IMGSRC photo album.  Agent Kanatzar explained the referral he received from C3, and noted the link between IMGSRC user dirtyoldman71 and the Yahoo! account, pigbreeder1971@yahoo.com.  Agent Kanatzar testified to the results of subpoenas that connected an IP address used by pigbreeder1971@yahoo.com to the defendant's internet service account with Cox Communications.  Agent Kanatzar described his experience with other child exploitation investigations involving IMGSRC.

Agent Kanatzar discussed his review of dirtyoldman71's IMGSRC photo album.  Agent Kanatzar testified that based upon his training and experience, he believed the photographs in dirtyoldman71's album met the definition of child pornography.  Agent Kanatzar explained the basis of his opinion, including: the focus of the images was on the genital area; the title of the

album referenced a familial relationship; the title of the album referenced the child's age; and the nature of the comments from other IMGSRC users demonstrated a sexual interest in children.

Agent Kanatzar testified that at the time he prepared his affidavit, he believed that crimes involving child pornography had occurred, and that evidence of these crimes would be found in the content of the Yahoo! email account pigbreeder1971@yahoo.com.  Agent Kanatzar further testified that when he left with the signed search warrant, he believed that warrant was valid.

### 2.    Results of the Yahoo! search

Agent Kanatzar testified regarding the results of the Yahoo! search warrant.  During the examination of the email account, pigbreeder1971@yahoo.com, Agent Kanatzar located approximately 1028 email messages during the time period of January 19, 2012 to December 5, 2012.  Agent Kanatzar found no child pornography images or movies.

According to Agent Kanatzar, of the 1028 total emails, approximately 84 email messages pertained to IMGSRC.  The majority of the messages that related to IMGSRC were from individuals requesting the password to a second dirtyoldman1971 photo album.[2]  Six of the 84 email messages were from other IMGSRC users who provided dirtyoldman71 the passwords to other photo albums.  Agent Kanatzar did not locate any child pornography in the photo albums he was able to access.  Two of the photo album accounts were locked for posting inappropriate material.

### 3.    Interview of Defendant

On February 5, 2013, Agent Kanatzar and Det. Odell interviewed the defendant at the Junction City Police Department.  According to Agent Kanatzar, he arranged to have a local officer accompany him during the interview.  Agent Kanatzar was informed that Det. Odell was

---

[2]  The title of the password protected photo album was "Step daughter nude closeup some preg." This photo album did not contain child pornography.

the one who handled child exploitation cases.  Agent Kanatzar and Det. Odell had not met previously.

Agent Kanatzar was aware that Det. Odell intended to conduct additional interviews after the interview of the defendant, including an interview of the defendant's granddaughter, K.A. Agent Kanatzar was not aware that Det. Odell planned to seek a search warrant for the defendant's residence until after the completion of that search.

C.     **Facts contained in the affidavit of Detective Odell**

On February 5, 2012, Det. Odell met with Agent Kanatzar in reference to a child exploitation investigation.  Agent Kanatzar informed Det. Odell that the case involved photographs of a young girl that had been posted to a Russian website known to have child pornography.  Agent Kanatzar showed the photographs to Det. Odell, and Det. Odell described the photographs in his affidavit.  Agent Kanatzar also explained to Det. Odell how the dirtyoldman71 IMGSRC album was connected to the Yahoo! email address pigbreeder1971@yahoo.com, and ultimately through the IP address, to the defendant.  (Gov. Ex. 8, p. 1.)

Det. Odell included information from the interview of the defendant in his affidavit. According to the affidavit, the defendant admitted that he had three computers in his residence and that he used the internet.  The defendant admitted that he used the internet to look at pornography.  At this point, Det. Odell noted that the defendant appeared very nervous.  When asked if he had viewed child pornography, the defendant began asking questions regarding the definition of child pornography.  The defendant said that he had seen nudist colony pictures that included young children.  (Gov. Ex. 8, p.2.)

According to the affidavit, the defendant admitted that he visited the Russian website. The defendant denied knowledge or responsibility for the user dirtyoldman71 and the email address pigfarmer1971. Det. Odell noted in the affidavit that the defendant said he worked on a pig farm South of Junction City, and that he was born in 1971. (Gov. Ex. 8, p. 2.)

The defendant denied that he had ever taken pictures of any of his grandchildren and posted them on the internet. When shown one of the images, the defendant agreed that it looked like one of his grandchildren, K.A. (Gov. Ex. 8, p. 2.)

Det. Odell also included in the affidavit that he interviewed the mother of K.A. K.A.'s mother said that K.A. had spent the night at the defendant's residence on occasion. Det. Odell showed K.A.'s mother one of the images, and she immediately identified the child as K.A., and the location of the photo as a pullout couch in the attic of the defendant's residence. (Gov. Ex. 8, p. 3.)

Finally, Det. Odell noted the types of evidence typically found in cases involving child pornography, based upon his training and experience. (Gov. Ex. 8, p. 3 – 4.)

**D.     Testimony at the suppression hearing – Det. Odell**

At the suppression hearing, Det. Odell testified that he had been with the Junction City Police Department for five years, two as a detective, and had received specialized training in the investigation of on-line child exploitation crimes. Det. Odell explained how he became involved in the investigation, and that he participated in the interview of the defendant. Det. Odell explained what information he received from Agent Kanatzar prior to interviewing the defendant.

During the interview, the defendant admitted that he had computers with internet access. The defendant admitted that he used the internet to look at pornography. When asked if he

looked at child pornography, the defendant inquired as to the definition of child pornography. The defendant said that he had grandchildren that would occasionally spend the night, including K.A. Det. Odell estimated K.A. would have been about 12 years old at the time of the interview.

The defendant admitted that he had visited the Russian website, but had no knowledge of dirtyoldman71 or pigfarmer1971@yahoo.com. The defendant said that he worked on a hog farm, and that he was born in 1971.

The defendant agreed that the girl in the photo looked like K.A. Det. Odell described the defendant's demeanor as being nervous, and considered this significant. Det. Odell explained that the defendant's nervous demeanor was more than what he normally would see when an individual is being confronted by an officer.

Det. Odell interviewed K.A.'s mother who identified K.A. as the child in the photograph. K.A.'s mother also identified the defendant's attic as the location where the photo was taken.

Det. Odell testified that at the time he prepared his affidavits, he believed crimes involving the sexual exploitation of a child had occurred, and that evidence of those crimes would be found at the defendant's residence and on the defendant's computer. Det. Odell also testified that when he left with the signed search warrant, he believed the warrant was valid.

Finally, Det. Odell testified that he did not consult with Agent Kanatzar prior to obtaining the search warrants for the defendant's residence and the defendant's computers. Det. Odell did provide the reviewing judge copies of the IMGSRC photographs.

## II.    Argument and Authority

The defendant moves to suppress the search warrant executed on his Yahoo! email account because, 1) the warrant was not sufficiently particular; 2) the affidavit failed to establish probable cause to believe that evidence of the suspected crime would be found in the email

account; and 3) the good faith exception did not save the warrant.  The defendant's arguments must fail because the warrant was sufficiently particular, there was probable cause to support the issuance of the warrant, and in any event, the search was valid under the good faith exception to the exclusionary rule.  Further, because the warrant was not facially deficient and a reasonable officer could presume it was valid, the defendant is not entitled to a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978).

### A.    Particularity and the Stored Communications Act

Probable cause exists to issue a warrant if the judge finds, given the totality of the circumstances, "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 236 (1983).  The Fourth Amendment requires that a warrant describe with "particular[ity] ... the place to be searched and the persons or things to be seized."

Warrants for the search of the content of email accounts are governed by the Stored Communications Act ("SCA"), codified at 18 U.S.C. § 2703.  The SCA authorizes the government to obtain the contents of electronic communications from a service provider only when the government obtains a warrant under 18 U.S.C. § 2703(d).  18 U.S.C. § 2703(c)(l)(A)-(B).  A § 2703(d) order "shall only issue if the government offers specific and articulable facts showing that there are reasonable grounds to believe that . . . the records . . . are relevant and material to an ongoing criminal investigation." 18 U.S.C. § 2703(d).

A § 2703 search warrant is broader than a search warrant under Fed. R. Crim. P. 41. First, § 2703(d) allows a court in one jurisdiction, e.g., Kansas, to issue an order for disclosure to an electronic service provider in another jurisdiction, e.g., California.  Second, § 2703(c) allows the service provider to release certain information to the government for an off-site search.

Otherwise, law enforcement would have to conduct the search at the service provider's, e.g., Yahoo!'s, premises.  Third, § 2703(g) provides that the "presence of an officer shall not be required for service or execution of a search warrant issued in accordance with this chapter requiring disclosure by a provider . . ."   Finally, § 2703(d) includes a mechanism for the service provider to quash or modify an order "if the information or records requested are unusually voluminous in nature or compliance with such order otherwise would cause an undue burden on such provider."  Obtaining a § 2703 warrant otherwise involves the same procedure described in Rule 41, namely:  the presentation of an affidavit for probable cause review by a neutral and detached magistrate.  18 U.S.C. § 2703(c)(1)(A).

The defendant's particularity challenge rests in large part on opinions from the Hon. David J. Waxse, United States Magistrate Judge, denying previous government requests for search warrants similar to the one at issue here.  *See, In re Applications for Search Warrants for Info. Associated with Target Email Accounts/Skype Accounts,* 13-MJ-8163-JPO, 2013 WL 4647554 at *4 (D. Kan. Aug. 27, 2013) (hereinafter referred to as the "August 27 Order").  Judge Waxse ruled that the government's application violated the Fourth Amendment.  *Id.* at *8. However, Judge Waxse agreed that the sections of the search warrants pertaining to the government's review of the information from the service providers were sufficiently particular. *Id*.

In support of his ruling, Judge Waxse cited two opinions:  *United States v. Otero*, 563 F.3d 1127 (10th Cir. 2009), and *United States v. Elias Barthelman*, CRIM.A. 13-10016-MLB, 2013 WL 3946084 (D. Kan. July 31, 2013).  These cases are distinguishable from the facts in the instant case.

In *Otero*, the Tenth Circuit's concern was that the first portion of the search warrant addressing the residence included limiting language identifying what the searcher would seize, but the second portion of the search warrant addressing the computer did not include this limitation. 563 F.3d at 1132 -33. Thus, as it related to the computer, the search warrant failed to inform the searcher of the parameters of the search and was, overbroad. *Id*. at 1133.[3] These facts are considerably different than the search warrant in the instant case, which included language in Section II of Attachment B to guide the searching law enforcement officer limiting the search to information that related to violations of 18 U.S.C. § 2252(a). (Gov. Ex. 6.) Permitting the two-step process set forth in Attachment B eliminated what would otherwise have necessitated a search by government agents of the electronically stored information at Yahoo!'s physical location, a process that would have essentially resulted in the same search but conducted at a different location.

*Barthelman* is also factually distinguishable. Judge Belot's ruling focused on the fact that the warrant failed to reference a particular criminal statute. *Barthelman*, 2013 WL 3946084 at *11. The warrant in *Barthelman* did not reference a particular criminal violation, but instead referenced an entire chapter of criminal statutes. Here, the application and the warrant specifically referenced 18 U.S.C. § 2252(a). (Gov. Ex. 6, 7.)

Judge Waxse noted that "[a]lthough there are many cases addressing the Fourth Amendment's particularity requirements as to computer searches, there is little guidance on the particularity that should be applied to search warrants seeking email communications stored in an account provided by an electronic communications service provider." The August 27 Order

---

[3]  However, the Court upheld the search under the good faith exception. *Id.*

at *7.  Despite this distinction, the Tenth Circuit cases pertaining to the search of files stored on a computer's hard drive provide such guidance.

In *United States v. Burke,* 633 F.3d 984 (10th Cir. 2011), the Court addressed the Fourth Amendment's requirement of particularity and the information that a person may store in a computer.  The *Burke* Court noted that the "ability of computers to store and intermingle a huge array of one's personal papers in a single place increases law enforcement's ability to conduct a wide ranging search into a person's private affairs, and accordingly makes the particularity requirement that much more important."  (Citation omitted.)  *Id.,* at 992.  The Court went on to state:

> We emphasize that practical accuracy rather than technical precision controls the determination of whether a search warrant adequately describes the place to be searched . . . A warrant need not necessarily survive hyper-technical sentence diagraming and comply with the best practices of *Strunk & White* to satisfy the particularity requirement . . . But, it should enable the searcher to reasonably ascertain and identify the things authorized to be seized.  (Citations omitted.)

*Id.*

The Tenth Circuit also discussed computer searches in *United States v. Burgess*, 576 F.3d 1078 (10th Cir. 2009).  In *Burgess,* law enforcement officers obtained a search warrant for the defendant's motor home and computer.  The warrant authorized the seizure of any evidence "which would tend to show a conspiracy to sell drugs."  *Id.* at 1090.  In addressing the scope of the government's search, the Court stated:  "officers must be clear as to what it is they are seeking on the computer and conduct the search in a way that avoids searching files of types not identified in the warrant."  *Id.*  at 1092.  However, a "computer search may be as extensive as reasonably required to locate the items described in the warrant."  *Id.  See also United States v. Grimmet*, 439 F3 1263, 1270 (10th Cir. 2006); *United States v. Brooks*, 427 F3 1246, 1252 (10th Cir. 2005) (given the nature of computers, a search can be as much an art as a science).

The *Burgess* Court further noted that

> This court has never required warrants to contain a particularized search strategy . . .
> Rather, the limitation on the scope of this search was explicitly constrained by content –
> computer files containing evidence of drug use or trafficking. . . . "[I]n the end, there may
> be no practical substitute for actually looking in many (perhaps all) folders and
> sometimes at the documents contained within those folders, and that is true whether the
> search is of a computer or physical files.

(emphasis added.)  *Id.* at 1093-1095.  *See also United States v. Schesso*, 2013 WL 5227071 at *6

– 7 (9th Cir. 2013) (acknowledging that the Court has moved away from search protocols, and

the absence of such did not violate the Fourth Amendment).

In the instant case, the location of the search was as particularized as possible:  the

servers of Yahoo! on which the emails associated with pigbreeder1971@yahoo.com were

located.  Additionally, the items to be seized from the execution of the search warrant were

identified with particularity, and were identified in such a manner as to limit what the searching

agent would be authorized to seize:  evidence of certain activities relating to material involving

the sexual exploitation of a child, pursuant to 18 U.S.C. § 2252(a).  (Gov. Ex. 6, 7.)

**B.    Probable Cause**

The defendant challenges Judge Sebelius's probable cause determination on the basis that

1) the images described in the affidavit are not child pornography and do not depict sexually

explicit conduct; and 2) there is no nexus between dirtyoldman's IMGSRC albums and the email

address pigbreeder1971@yahoo.com.  This Court should uphold Judge Sebelius's determination

that the warrant was supported by probable cause.

The Fourth Amendment provides that "no Warrants shall issue, but upon probable

cause."  "Probable cause to issue a search warrant exists when the supporting affidavit sets forth

sufficient facts that would lead a prudent person to believe that a search of the described

premises would uncover contraband or evidence of a crime."  *United States v. Sanchez*, 555 F.3d

910, 914 (10th Cir.2009).  "Probable cause requires only a probability or substantial chance of criminal activity rather than an actual showing of such activity."  *United States v. Biglow*, 562 F.3d 1272, 1281 (10th Cir. 2009) *citing NY v. PJ Video* 475 US 868 877-78 (1986).  "Because probable cause is a flexible, common-sense standard, we must interpret the Government's affidavit in a flexible, common-sense way."  *Biglow*, at 1282 (quotation omitted).

**The images meet the definition of child pornography.**

Agent Kanatzar investigated the defendant on the suspicion that he knowingly distributed visual depictions of a minor engaged in sexually explicit conduct, in violation of 18 U.S.C. § 2252(a)(2). "Sexually explicit conduct" is defined to include the "lascivious exhibition of the genitals or pubic area."  18 U.S.C. § 2256(2)(E).

In determining whether a visual depiction of a minor constitutes a "lascivious exhibition of the genitals or pubic area," a fact finder may look to what are referred to as the "*Dost* factors." These factors include the following non-exhaustive list:

1)  whether the focal point of the visual depiction is on the child's genitalia or pubic area;

2)  whether the setting of the visual depiction is sexually suggestive, i.e., in a place or pose generally associated with sexual activity;

3)  whether the child is depicted in an unnatural pose, or in inappropriate attire, considering the age of the child;

4)  whether the child is fully or partially clothed, or nude;

5)  whether the visual depiction suggests sexual coyness or a willingness to engage in sexual activity;

6)  whether the visual depiction is intended or designed to elicit a sexual response in the viewer.

*United States v. Dost*, 636 F. Supp. 828, 832 (S.D. Cal. 1986) aff'd sub nom. *United States v. Wiegand*, 812 F.2d 1239 (9th Cir. 1987) and aff'd, 813 F.2d 1231 (9th Cir. 1987).

The *Dost* Court emphasized that a visual depiction need not involve all of the above factors, and the determination must be "based on the overall content of the visual depiction, taking into account the age of the minor." *Id*. The *Dost* Court further elaborated:

> For example, consider a photograph depicting a young girl reclining or sitting on a bed, with a portion of her genitals exposed. Whether this visual depiction contains a "lascivious exhibition of the genitals" will depend on other aspects of the photograph. If, for example, she is dressed in a sexually seductive manner, with her open legs in the foreground, the photograph would most likely constitute a lascivious exhibition of the genitals. The combined effect of the setting, attire, pose, and emphasis on the genitals is designed to elicit a sexual response in the viewer, albeit perhaps not the "average viewer", but perhaps in the pedophile viewer.

*Id.*

The images at issue in *Dost* all involved nude underage females, and the Court held all to meet the definition of sexually explicit conduct. *Id*. at 833. However, nudity is not required. *See*, *United States v. Knox*, 32 F.3d 733, 745 - 746 (3rd Cir. 1994) (finding that lascivious exhibition includes the fully covered genitals or pubic area of minor children, and the images at issue qualified where the video focused on close-up views of the genitals and pubic area); *United States v. Helton*, 302 Fed.Appx. 842 (10th Cir. 2008) (finding a video of a young girl getting off the toilet to be sexually explicit conduct where the girl's underpants and pubic area were the center of the focused area, and the defendant intended the videotape to elicit a sexual response in the viewer) *unpublished*.

In the instant case, it was reasonable for Agent Kanatzar to believe that the images met the definition of sexually explicit conduct. Agent Kanatzar is not a lawyer, and testified that he had heard the term "*Dost* factors," but did not know what it was. However, Agent Kanatzar is a federal law enforcement officer with extensive training and experience in the investigation of

crimes relating to material involving the sexual exploitation of minors.  Based upon his training and experience, Agent Kanatzar believed the images from dirtyoldman71's IMGSRC album were child pornography.  Agent Kanatzar included in his affidavit information that showed his belief was reasonable.  Agent Kanatzar confirmed this information in his testimony.  In addition to viewing the images on IMGSRC, Agent Kanatzar noted the following:

1.   He was aware of numerous other child pornography offenders who had accessed child pornography images from the IMGSRC website;

2.   He knew from experience and training the surreptitious photography of the genital area of a sleeping child, familial relationship, and reference to age under 18 years were common themes in child pornography; and

3.   The comments posted to dirtyoldman71's IMGSRC album were indicative of individuals with an interest in the sexual abuse of children and in child pornography.

Agent Kanatzar's affidavit set forth sufficient facts for the reviewing magistrate to find probable cause to support the issuance of the search warrant.

**There is a nexus between the images and the defendant's email account.**

In addition to establishing probable cause to believe a crime has been committed, the search warrant affidavit must show that there is a "fair probability that evidence of that crime will be found at a particular location."  *United States v. Lego*, 2007 WL 2746631 (W.D.Mich 2007).  "In issuing a search warrant, a magistrate is entitled to draw reasonable inferences about where the evidence is likely to be kept..."  *United States v. McClellan*, 165 F.3d 535, 546 (7th Cir. 1999).

Judge Sebelius properly found a nexus between the images in dirtyoldman71's IMGSRC album and the email address pigbreeder1971@yahoo.com.  Agent Kanatzar testified that, based upon the records he received from C3, the email associated with dirtyoldman71 was

pigbreeder1971@yahoo.com.  Agent Kanatzar explained that a user requesting the password to

dirtyoldman71's second photo album would do so by clicking a hyperlink that would send an

email to pigbreeder1971@yahoo.com.

There is a direct connection between the suspected criminal activity, posting images on

the IMGSRC album, and the pigbreeder71@yahoo.com email account because the information

provided to Agent Kanatzar was that account was used in the commission of the crime.  *United*

*States v. Ali*, 870 F. Supp. 2d 10, 37 (D.D.C. 2012); *see also, United States v. Wagers*, 452 F.3d

534, 541 (6th Cir.2006) (finding search warrant directed to defendant's AOL e-mail account was

supported by probable cause, because there is a distinct nexus "between an AOL email account

and Internet-accessed child pornography, especially where some of that access has been through

AOL IP addresses....").

### C.    The Good Faith Exception

The defendant alleges that Agent Kanatzar's affidavit raises "questions about the

accuracy of the facts, as well as whether some omissions of material facts were material."  Doc.

19, page 15.  The defendant's challenge fails to defeat the good faith exception, and the Court

should deny his request for a *Franks* hearing.

The purpose of the exclusionary rule is general deterrence.  *Otero*, at 1133-34, *citing*

*Herring v. United States*, 555 U.S. 135, 129 S.Ct. 695, 699–700 (2009).  "Because of this

underlying purpose, evidence should be suppressed only if it can be said that the law

enforcement officer had knowledge, or may properly be charged with knowledge,  that the search

was unconstitutional under the Fourth Amendment. "  *Id*., *citing  Illinois v. Krull*, 480 U.S. 340,

348–49 (1987).  To trigger the exclusionary rule, an officer's misconduct must be sufficiently

deliberate that suppression could deter it, and that deterrence is worth the substantial cost of exclusion. *Herring* at 703.

Assuming, arguendo, that the affidavit did not supply probable cause for the warrant, this Court should find that the warrant is saved by the "good faith exception" of *United States v. Leon*, 468 U.S. 897 (1984). "In *Leon*, the Supreme Court modified the Fourth amendment exclusionary rule by holding that evidence seized pursuant to a search warrant later found to be invalid need not be suppressed if the executing officers acted in objectively reasonable, good-faith reliance on the warrant." *United States v. Rowland*, 145 F.3d 1194, 1206 (10th Cir. 1998) *citing Leon* at 922. The *Leon* Court reasoned that the exclusionary rule "is designed to deter police misconduct rather than to punish the errors of judges and magistrates" and noted that purpose is ill-served by excluding evidence "when an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope," because in most of those cases "there is no police illegality and thus nothing to deter." *Leon*, 468 U.S. at 916, 920, 921 *See also Rowland* (refusing to exclude evidence and applying good-faith exception where search warrant not supported by probable cause); *United States v. Callwood*, 66 F.3d 1110, 1113 (10th Cir. 1995) (recognizing applicability of *Leon* good faith exception when officers reasonably relied on warrant issued by a detached and neutral magistrate, "even assuming arguendo that a constitutional violation occurred"); *United States v. Nolan*, 199 F.3d 1180 (10th Cir. 1999) (upholding search based upon Leon good faith exception without deciding whether warrant was supported by probable cause).

Good faith is determined with reference to "the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." *Leon*, 468 U.S. at 922 n.23. However, "it must . . . be

Page 19

remembered that the knowledge and understanding of law enforcement officers and their appreciation for constitutional intricacies are not to be judged by the standards applicable to lawyers." *United States v. Cardall*, 773 F.2d 1128, 1133 (10th Cir. 1985).   There is a presumption, which "must carry some weight," that "when an officer relies upon a warrant, the officer is acting in good faith."  *Id.  See Leon*, 468 U.S. at 922 ("[S]earches pursuant to a warrant will rarely require any deep inquiry into reasonableness, for a warrant issued by a magistrate normally suffices to establish that a law enforcement officer has acted in good faith in conducting the search.") (internal quotations omitted).

Leon identified four instances where an officer's reliance on a warrant would not be objectively reasonable:  (1) if the judge issued the warrant on a deliberately or recklessly false affidavit, (2) where the judge abandoned his neutral and detached judicial role, (3) where the affidavit is so lacking in indicia of  probable cause that it would be unreasonable for the officer to rely on it, and (4) where the warrant is so facially deficient that an officer cannot reasonably believe it to be valid.  *Leon*, 468 U.S. at 923, 926.  The tenets of *Leon* require suppression only in those cases where suppression will have a deterrent effect on the actions of law enforcement officers:

> If the exclusion of evidence obtained pursuant to a subsequently invalidated warrant is to have any deterrent effect, therefore, it must alter the behavior of individual law enforcement officers or the policies of their departments. . . . [We] conclude that suppression of evidence obtained pursuant to a warrant should be ordered only on a case-by-case basis and only in those unusual cases in which exclusion will further the purposes of the exclusionary rule.

*Leon*, 468 U.S. at 918.

In the instant case, Agent Kanatzar acted reasonably and in good faith.  *See Cardall*, at 1133 ("When we consider whether the officer relied in good faith upon a

warrant, we must look to the underlying documents to see whether they are devoid of factual support . . . . It is only when the [officers'] reliance was wholly unwarranted that good faith is absent"). Moreover, suppression of evidence obtained pursuant to a warrant should be ordered only in the unusual case where exclusion will further the purposes of the exclusionary rule, i.e. to deter police misconduct. *Leon*, at 918. No such misconduct occurred here.

Agent Kanatzar's belief in the legal validity of the warrant was objectively reasonable, bringing the instant case squarely within the good faith exception of *Leon*. Agent Kanatzar testified to the specific reasons why he believed the warrant was valid when issued, including the fact that he believed the images posted by dirtyoldman71 met the definition of child pornography. There was no bad faith or misconduct by Agent Kanatzar to deter. Therefore, this search warrant falls under the good faith exception.

## Conclusion

For the above reasons, the Court should overrule and deny the defendant's Motion to Suppress Yahoo Email Search Warrant.

Respectfully submitted,

BARRY R. GRISSOM
United States Attorney

/s/ Christine E. Kenney
Christine E. Kenney, #13542
Assistant U.S. Attorney
444 SE Quincy, Room 290
Topeka, KS  66683
(785) 295-2850
christine.kenney@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on the 20th day of December, 2013, I electronically filed the

foregoing Notice with the clerk of the court by using the CM/ECF system, which will send a

notice of electronic filing to all counsel of record.

s/ Christine E. Kenney
Christine E. Kenney, #13542
Assistant United States Attorney
444 S.E. Quincy, Suite 290
Topeka, KS 66683
(785) 295-2850
christine.kenney@usdoj.gov
